**KARPCHUK et al. v. BERRY.**

No. 2430.

District Court, E. D. Pennsylvania.

Jan. 20, 1943.

188

John B. Martin, of Duane, Morris & Heckscher, of Philadelphia, Pa., for plaintiffs.

Abraham Berkowitz, of Philadelphia, Pa., for defendant.

BARD, District Judge.

This is an action for damages in the amount of $3,531.95 for breach on oral contract. I make the following special

### Findings of Fact.

1. Plaintiffs are residents of Pennsylvania and defendant is a resident of New Jersey.

2. In and prior to October 1941, defendant was engaged, under the name of Insurance Advisory Bureau, in the business of giving advice and recommendations to owners of life insurance policies with re-spect to changing their life insurance programs so as best to meet their needs.

3. On or about October 9, 1941, plaintiff Michael Karpchuk left twelve life insurance policies owned by plaintiffs at defendant's office for study and recommendations.

4. On October 13, 1941, the three plaintiffs went to defendant's office to discuss defendant's recommendations and were advised that they had been overpaying on their policies and were entitled to a refund and a reduction of future premiums.

5. Defendant advised plaintiffs that if they paid to defendant the sum of $198, defendant could obtain for them from their insurance company a refund of at least $1400 in cash and could effect a reduction of their total premiums annually of at least $100 without in any way changing their policies.

6. Plaintiff Michael Karpchuk signed a written agreement to pay this sum to defendant for his advice and recommendations and also signed a power of attorney authorizing defendant to make any changes in the plaintiffs' life insurance program.

7. At the same time, on October 13, 1941, plaintiff Michael Karpchuk signed a blank printed form, later filled in by the defendant, requesting the insurance company to make a number of changes in the policies of the plaintiffs.

8. The plaintiffs paid to defendant the sum of $190 on account of the agreed price of $198.

9. On October 14, 1941, defendant advised plaintiffs that their policies had been sent to the home office of the insurance company to effect a number of specified changes.

10. Plaintiffs thereupon called at defendant's office and protested against defendant's making any changes in their policies on the ground that this was not in accordance with the advice given them by the defendant.

11. Defendant advised plaintiffs that the refund and premium reduction could not be effected unless the proposed changes were made.

12. Plaintiffs refused to agree to any changes in their policies and demanded that defendant effect the refund and premium reduction without any changes in their policies or return their deposit, but defendant refused to do so.

## Discussion.

The testimony produced by the plaintiffs was that as a result of foreign language broadcasts by defendant that he could effect cash refunds and substantial savings in premiums on existing life insurance policies, plaintiff Michael Karpchuk visited defendant's place of business on October 9, 1941, and left twelve policies owned by plaintiffs for examination. On October 13, 1941, all the plaintiffs went to defendant's office to ascertain defendant's recommendations. They were advised by one Griffin, an employee of the defendant, that his examination of their policies indicated that they could get back from the insurance company a minimum refund of $1400 in cash and could have their annual premiums reduced by at least $100, because the insurance company had been overcharging them for a number of years. Plaintiffs asked whether this meant that they had been cheated by the insurance company and Griffin replied that this, "in plain words", was the fact. He stated that defendant would effect a reduction in premiums on plaintiffs' policies and obtain a cash refund of a minimum of $1400 for a fee of $198. Plaintiffs inquired whether this would entail any changes in their policies and were told that the only thing that would have to be changed was the amount of the premium. Plaintiffs thereupon agreed to pay the defendant the $198 and gave Griffin $190 in cash on account. They requested a written statement that they had been overcharged by their insurer and that defendant was to obtain the refund in premiums without changing their policies. Griffin told them that this would be forwarded to them by mail.

Griffin then produced several papers which he asked the plaintiff Michael Karpchuk to sign. The first was an agreement which stated that Michael Karpchuk had consulted defendant for an analysis of his life insurance policies and had accepted defendant's recommendations and had signed forms to be forwarded to the insurance company, and that for defendant's advice he agreed to pay to defendant $198. The second paper was a power of attorney authorizing defendant to notify the insurance company, on behalf of the plaintiff, as to what changes should be made in his life insurance program. The final paper was a printed form requesting changes in insurance. This form had spaces for insertion of the name of the company to which it was to be sent, the numbers of the policies to be changed, the names of the beneficiaries and the nature of the changes requested. This last form, according to plaintiffs, was in blank. When they pointed out to Griffin that it included provisions for changing the conditions of the policies, he told them that no entry would be made in this column and that this form would contain merely a list of the policies, the amounts of the refunds, and the amounts of the premiums. He explained that he could fill out this form at the time, but that it would take too long and that it could be filled out subsequently by other employees of the defendant. Plaintiff Michael Karpchuk thereupon signed these three papers.

Shortly thereafter plaintiffs received by mail from the defendant a statement dated October 14, 1941, setting forth that their policies had been sent to the home office of the insurance company for a number of changes in accordance with defendant's recommendations. Plaintiffs called upon the defendant and complained that he had not recommended any changes and had agreed to obtain the refund without changing the policies except for the premium rate. Griffin then told them that it would be necessary to make the proposed changes in the policies in order to effect the return of the cash in the amount promised and the reduction of the premiums. Plaintiffs refused to agree to the proposed changes and sought the return of their money, which was refused.

The testimony of Griffin is in flat contradiction to that of the plaintiffs. He testified that on October 13, 1941, when the plaintiffs called at defendant's office, he explained in detail the changes recommended as to each policy and that plaintiffs accepted these recommendations, and plaintiff Michael Karpchuk signed the agreement, the power of attorney and the direction to the insurance company to make the changes. According to his testimony, this last paper was completely filled out in triplicate when signed by the plaintiff, except for the date. The date on the copy of this paper which was offered in evidence was originally October 14, and had been changed in ink to October 18. Griffin further testified that on October 16, after the plaintiffs had received notice by mail of these changes, plaintiff Michael Karpchuk had come in to ask for some additional information and had expressed no complaint, but that eleven days later the three plaintiffs had come in and stated that they had decided not to accept defendant's recom-

mendations and not to go through with the plan.

■ I have concluded that the testimony of the plaintiff as to this transaction is true. With respect to what is probably the most significant issue of fact, namely, whether the form requesting the change in the policies was filled out at the time, it is difficult to accept defendant's testimony. The copy introduced into evidence was typed under a carbon and the date October 14, 1941, was unquestionably written on the typewriter at the same time as the rest of the form. The evasive and conflicting explanation of the defendant's employee as to why this date was allegedly left blank when the form was prepared, and why the date of October 14 had been changed in ink to October 18, although the plaintiffs were notified on the 14th that this form had been mailed to the company, lend strong support to this conclusion.

Defendant argues strenuously that it is impossible to give credence to plaintiff's testimony because no intelligent person could believe that substantial cash refunds and premium reductions could be effected without a change in the policies. It is not difficult to understand this, however, where, as appears, this was precisely the impression defendant was seeking to create in order to sell its services. It may be noted also that defendant advertised extensively by foreign language broadcasts, and as to prospective customers not too familiar with the English language, the ease with which misunderstandings could be encouraged or at least not dispelled is obvious. And without considering the soundness of the recommendations of the defendant to these plaintiffs, it may also be pointed out that defendant was not too meticulous in ascertaining the facts upon which this advice was based, in view of Griffin's admission that the advice with respect to one policy assumed that dividends had been permitted to accumulate, although they in fact had not, and defendant had made no effort to ascertain this fact.

■ The defendant further argues that, since the written agreement between the parties provided that the sum of $198 was to be paid to him in consideration of the acceptance of his advice and recommendations as to the policies, the plaintiffs are precluded as a matter of law from showing any prior or contemporaneous oral agreement binding defendant to procure the refund and premium reductions which he advised could be effected. Plaintiffs concede that they read and understood this agreement, but contend that its execution was induced only by the fraud of the defendant in representing that the refund and premium reduction could be effected without any change in the policies. But assuming that this was the advice of the defendant on the basis of which plaintiffs executed the written agreement to pay him for his advice, the fact remains that the defendant did not agree in that written agreement to procure any refund and premium reduction and hence a prior or contemporaneous parol promise to do so is not enforceable.

■ But while defendant did not obligate himself in the written agreement to obtain for plaintiffs the refund and premium reduction which he advised could be procured, it is clear that the contract, construed in the light of the surrounding circumstances required that the advice given be feasible to produce the results promised, in order that defendant be entitled to the fee which plaintiffs agreed therein to pay. In other words, if the defendant advised a customer that his insurer would make specified refunds and premuim reductions if the customer made changes in his life insurance program in accordance with defendant's recommendations, defendant would obviously not be entitled to the agreed fee for his advice if the insurer would not make the stipulated refund and reduction upon the effecting of the changes advised. In view of the defendant's admission that the plaintiffs' insurer would not make the agreed refund and premium reduction without changing their policies, although, as I have found, defendant's advice to the plaintiffs was that the insurer would do so, there is a failure of consideration and plaintiffs are entitled to the return of the $190 paid by them for said advice.

■ Plaintiffs argue that the contract declared upon was an oral contract between the defendant and the three plaintiffs and that a written agreement by one of them does not bind the others. Under the circumstances, however, it appears clear that to the extent of their interest in these policies, the other plaintiffs authorized plaintiff Michael Karpchuk to act on their behalf and they cannot repudiate the written agreement in the execution of which by him they acquiesced.

191

I make the following

### Conclusions of Law.

1. The parol evidence rule precludes recovery on an oral promise inconsistent with, and not made part of, a contemporaneous or subsequent written agreement between the parties.

2. The rights of all the plaintiffs are determined by the written agreement between Michael Karpchuk and the defendant.

3. There was a failure of consideration under the written contract on the part of the defendant, and plaintiffs are entitled to a return of the consideration of $190 paid by them to the defendant.

4. Judgment is hereby entered in favor of the plaintiffs and against the defendant in the amount of $190 with interest from October 13, 1941.